**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **STEVEN H.,**[1] ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 7:20-CV-506** |
| ) | |
| **KILOLO KIJAKAZI**[2]**, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff  Steven H. ("Steven") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act").  42 U.S.C. §§ 401–433, 1381–1381f.  Steven alleges that the Administrative Law Judge ("ALJ") erred by failing to properly consider the functional impact of his physical impairments; failing to properly assess the opinion of the consultative physician; failing to properly assess and accommodate his mental impairments; and failing to properly consider his subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Steven's Motion for Summary Judgment (Dkt. 16) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 20).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Steven is not disabled under the Act.  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**CLAIM HISTORY**

Steven filed for DIB and SSI on June 15, 2017, claiming that his disability began on April 30, 2016. R. 233–40.  Steven's date last insured was September 30, 2017; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 999. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).  Steven's claims were denied by the Commissioner at the initial and reconsideration level of administrative review. R. 79–150.

On September 25, 2019, ALJ Michael Dennard held an administrative hearing to consider Steven's claim. R. 38–62. Counsel represented Steven at the hearing, which included testimony from vocational expert Mark Hileman. Id. On October 28, 2019, the ALJ entered a decision

analyzing Steven's claims under the familiar five-step process[3] and denying his claim for benefits. R. 16–31.

The ALJ determined that Steven was insured at the time of the alleged disability and that he suffered from the severe impairments of anxiety, trauma disorder, personality disorder, depression, substance abuse disorder (alcohol), fractures of the right wrist and status post open reduction and internal fixation surgery, and left shoulder sprain. R. 18.  The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19–20.  The ALJ concluded that Steven retained the residual functional capacity ("RFC") to perform a range of medium work. R. 20.  Specifically, the ALJ found that Steven can operate hand controls with the right and left hand frequently; is limited to simple, routine tasks with simple, short instructions and simple decisions; can interact occasionally with supervisors; can have occasional, superficial interaction with coworkers, with "superficial" meaning he can do such things as telling time of day or providing directions to the bathroom; can never interact with the public; and is limited to a work setting with "low stress," defined as having only occasional workplace changes. R. 20–21.

The ALJ determined that Steven could not perform his past relevant work of window installer and window unit assembler, but that he could perform jobs that exist in significant numbers in the national economy, such as laundry laborer, housekeeper/cleaner and clothing

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

bagger. R. 29–30.  Thus, the ALJ concluded that Steven was not disabled. Id. Steven appealed

the ALJ's decision and on June 26, 2020, the Appeals Council denied his request for review.

R. 1–5.  This appeal followed.

## ANALYSIS

### Function-by-Function

Steven asserts that the ALJ did not properly accommodate his right wrist impairment by

limiting him to frequently operating hand controls and failed to properly consider whether he

would need to take breaks during the day due to pain. Pl. Br. Summ. J. pp. 17–20.

Steven, who is left-handed, fractured his right wrist in January 2017, and underwent an

open reduction and internal fixation surgery of his right distal fracture in February 2017. R. 667,

710. In June 2017, Steven was advised to follow up with an orthopedist to address his "marked

loss of function" of the right wrist. R. 686.  On February 28, 2017, Steven, who was incarcerated,

followed up with his surgeon, Trevor Owen, M.D., and reported doing well and that his pain

continued to improve. R. 779.  Dr. Owen noted that Steven was neurovascularly intact distally,

his incision was well-healed with no signs of infection, he had near full range of motion with his

fingers, and was making good progress. Id.  Dr. Owen limited Steven to non-weightbearing

activity except for light activities of daily living. Id.

On May 28, 2017, Steven was in a single-car accident, was not wearing a seatbelt, and

was ejected from the car after it struck a tree. R. 712, 717.  Steven fractured a rib, and

complained of pain in his left face, left shoulder and right hip. R. 712.  In August 2017, Dr.

Owen noted that Steven had nearly full range of motion in his right wrist, and 4 out of 5 strength.

R. 752.   Dr. Owen recommended physical therapy. Id.  Steven did not pursue physical therapy

and did not seek further treatment for physical complaints until May 2019.

In May 2019, Steven sought treatment in the emergency room for cellulitis in his right leg. He reported working as an electrician and carpenter when he noticed bruising on his right leg. R. 939. He was diagnosed with an acute abscess and cellulitis, admitted to the hospital to manage the abscess, and discharged three days later. R. 956.  In June 2019, Steven was admitted to the hospital again for an abscesses and cellulitis. R. 974.  Steven was given IV antibiotics and discharged two days later. Id.

Steven testified at the administrative hearing that he has pain in his right wrist all the time, cannot use his right thumb, has difficulty grabbing things, and drops things. R. 55.

On December 6, 2017, state agency physician Bert Spetzler, M.D., reviewed Steven's records and determined that he was capable of occasionally lifting 20 pounds and frequently lifting 10 pounds; standing, walking and sitting 6 hours in an 8-hour workday; unlimited pushing and pulling; frequently climbing ramps and stairs; frequently balancing, stooping, kneeling, and crouching; and occasionally crawling. Dr. Spetzler noted that Steven has right wrist pain with internal fixation and left shoulder rotator cuff pain.  Dr. Spetzler also found that Steven was limited to frequent reaching overhead on the left due to an x-ray that showed irregularity in the vicinity of the greater tuberosity, and Steven cannot raise his left arm straight up. R. 103–05. However, overall, the SSA determined that there was insufficient evidence to evaluate Steven's medical claim on initial review. R. 103  On September 24, 2018, state agency physician Robert McGuffin, M.D., reviewed Steven's records on reconsideration and determined that his physical impairments were non-severe. R. 119.

The ALJ reviewed Steven's treatment records and testimony regarding his pain and limitations. R. 22–29.  The ALJ reviewed the initial state agency evaluations finding insufficient

evidence and gave them no weight. R. 29. The ALJ reviewed Dr. McGuffin's opinion and

determined that it was not persuasive because, although the record does not show intense upper

extremity issues for at least 12 months, Steven "may have residual weakness in his right wrist

and left shoulder." R. 29.

The ALJ noted that the record does not show wrist issues after August 2017, when Steven

was referred to physical therapy and Steven did not complain of wrist issues when he established

care with a primary care provider in June 2018. R. 28–29. Indeed, Steven did not return to Dr.

Owen for treatment after his August 2017 appointment and referral to physical therapy, nor did

Steven seek other treatment for his right wrist. Regarding Steven's left shoulder, the ALJ noted

that Steven complained of pain in his left shoulder in August 2017 and had rotator cuff weakness

and positive impingement signs and was referred to physical therapy. Steven did not complain

of shoulder issues in future visits, and worked as a carpenter in May 2019, "indicating he had

good use of his upper extremities despite his right wrist and left shoulder issues." R. 29. The

ALJ noted that Dr. Owen stated in August 2017 that Steven had no set restrictions, although

Steven had some weakness in the left shoulder and right wrist upon examination. R. 29. Thus,

the ALJ concluded that Steven might have residual weakness "indicating some precautionary

limitations from his two upper extremity issues." R. 29. The ALJ determined that Steven can

perform medium work, but only operate hand controls frequently. R. 29.

Steven asserts that the ALJ "minimized" his objective findings, and that "the evidence of

record indicates that his ability to use his left and right upper extremities is at a lesser level than

found by the ALJ." Pl. Br. Summ. J. p. 19. Steven does not point to any evidence in support of

his claims, aside from reciting the records reflecting that he fractured his wrist, had 4 out of 5

strength in his right wrist, and was referred for physical therapy.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

 In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ properly explained how the RFC accounts for Steven's physical impairments and provided the necessary medical and non-medical facts and evidence to support his conclusions.  The ALJ found that Steven's right wrist fracture status post-surgery and left shoulder sprain were severe impairments. R. 18. He reviewed Steven's medical records in detail,

and reviewed the state agency opinions and Dr. Owen's finding in August 2017 that Steven had

no set restrictions.  The ALJ considered Steven's physical findings of weakness in the left

shoulder and right wrist in 2017; his failure to complain of wrist or shoulder complaints to his

treating providers in 2018; and his work as a carpenter in 2019. The ALJ determined that Steven

may have residual weakness in his right wrist and left shoulder, and thus limited Steven to

medium level work with frequent operation of hand controls.

Steven also asserts that the ALJ erred by failing to consider whether he would need

breaks for pain during the workday, and whether he could sustain work activities on a regular

and continuing basis for an 8-hour workday. Pl. Br. Summ. J. p. 19.  In support, Steven points to

his medical records documenting complaints of pain from a fall on his left shoulder in 2016, his

right wrist facture in 2017, and his subsequent treatment through Dr. Owen's visit in August

2017. See Pl. Br. Summ. J. p. 18 (citing R. 667, 682, 705, 751, 753, 786). These complaints of

pain were acknowledged and considered by the ALJ, and the ALJ provided reasoning for his

conclusion that despite his previous right wrist fracture and left shoulder injury, Steven could

perform a range of medium work.  Further, Steven points to no evidence in the record, either

objective or subjective, indicating that he is unable to complete an 8-hour workday.  The ALJ's

RFC is, by definition, a determination of what Steven can perform on a "regular and continuing

basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20

C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2.

The ALJ provided a detailed summary of Steven's physical impairments, medical

records, testimony and opinion evidence. The ALJ discussed Steven's symptoms, his resulting

limitations, the medical evidence, medical opinions, Steven's testimony, his credibility and

conflicting medical evidence. R. 21–29.  The ALJ was required to create a narrative discussion

that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Steven's alleged symptoms, and the medical opinions of record. This narrative discussion allows this court to see how the evidence in the record—both medical and nonmedical—supports the ALJ's RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### **Mental Impairments**

Steven asserts that the ALJ failed to properly account for his mental impairments by only addressing the skill level of work and by failing to address his ability to sustain work over an 8-hour workday. Steven also alleges that the ALJ's RFC does not properly accommodate his moderate impairment with interacting with others.

Steven has a long history of alcohol abuse, cocaine abuse, depression, and anxiety. R. 1011. On June 2, 2013, Steven underwent a consultative examination with Marvin Gardner, Jr., Ph.D. R. 640. Steven presented as "diffident and obsequious," and his affect was blunted. He reported living with his parents, having no friends, going to church every Sunday but belonging to no other organized groups. R. 641. Steven reported taking Xanax and Zoloft as prescribed and being psychiatrically hospitalized on three previous occasions. Steven reported that his anxiety and panic makes him not want to be around people.

Dr. Gardner found that Steven's immediate recall, recent memory and long-term memory were within normal limits. R. 643. Steven's fund of general information was moderately impaired, but his ability to do computation was within normal limits. R. 644. Steven could perform serial 3s in 35 seconds with no errors, and serial 7s in 1 minute and 35 seconds with 2 errors. Dr. Gardner found that Steven was likely to have no impairment with concentration,

persistence or pace with simple and repetitive tasks, but a mild-to-moderate impairment with

concentration, persistence and pace when performing complex work tasks. Id. Steven's insight

and judgment were within normal limits, but his abstract thinking was moderately impaired.

Dr. Gardner determined that Steven could perform simple and repetitive tasks and

maintain regular attendance in the workplace. Dr. Gardner found that Steven can perform simple

and repetitive work tasks on a consistent basis, without special or additional supervision.  He can

complete a normal workday or work week without interruptions from his psychiatric condition

and remaining abstinent from substances. Dr. Gardner found that Steven should not work with

the general public or in large open spaces with a large number of co-workers due to his PTSD

and related panic attacks.  Dr. Gardner noted that Steven was able to accept all instructions he

gave and respond appropriately, and progressively became less anxious and more relaxed as

rapport was built throughout his examination.  Dr. Gardner noted that Steven's anxiety becomes

severe when he is attempting to socially interact with large numbers of co-workers or interact

with the general public, and he can interact with a small number of co-workers.  Dr. Gardner

noted that Steven would best be suited working alone and with infrequent interactions with

supervisors.  Dr. Gardner found that Steven's prognosis is fair with compliance to psychiatric

treatment and abstinence from substances. R. 645.

 On December 21, 2016, Steven sought treatment for his left shoulder, and complained of

continued problems with anxiety and post-traumatic stress disorder ("PTSD"). R. 681.  He was

anxious and jumpy, and was diagnosed with bipolar affective disorder, anxiety state and alcohol

abuse. Id. Steven was arrested and taken into police custody in January 2017. R. 667.  In June

2017, Steven sought treatment at the emergency department after the May 28, 2017 motor

vehicle accident and noted being unsure if he was a driver or passenger in the accident. R. 687.

Steven presented as fidgety and anxious, and Randall Rhea, M.D., referred Steven to a

psychiatric consultation for PTSD. R. 688–89.

In February 2018, Steven sought treatment with Dr. Rhea at Vinton Family Practice and

reported that he just got out of jail for missing child support payments. R. 904. He noted trouble

with coping, sleeping and having racing thoughts. Id. Steven had a flat affect, was anxious and

fidgety. R. 905. Dr. Rhea diagnosed depressive disorder, PTSD, generalized anxiety disorder and

alcohol abuse. He prescribed Celexa and Wellbutrin and noted that Steven was presently being

evaluated for mental health care and was in a program at TAAP to gain adaptive skills. R. 904.

On June 27, 2018, Steven was evaluated by Afsanah Widner, P.A., at New Horizons

Healthcare. R. 911. His chief complaint was depression and ADHD, and a screening revealed

mild depression. Id.  Steven reported that Wellbutrin was doing well for his mood and

depression, that he is restless at night, and has a history of anxiety.  Steven noted that being

around a lot of people causes his anxiety to be worse, along with harassment from his ex-

girlfriend. Id.  On examination, Steven was oriented to person, place, time and situation; he did

not have a thought disorder; his affect was appropriate; and he was able to concentrate and stay

focused during the encounter. R. 913.

In August 2018, Steven saw Jessica Gillispie, P.A., at New Horizons Healthcare, and

complained of depression and anxiety. R. 915.  Steven noted that his depression is "fairly stable"

on Wellbutrin, and he suffered from increased sadness following the death of his father in

November. Id. He reported that his anxiety is worse in social settings, noting that he "can't stand

to be around crowds of people." Id.  Steven also reported having multiple panic attacks per day

and drinking 12 beers a week to cope with his anxiety.  Upon examination, Steven was well-

appearing, had good eye contact, good hygiene, was alert and oriented, had intact insight,

judgment, cognition, recent and remote memory, but sad affect. R. 916.  Ms. Gillispie continued

Steven's Wellbutrin prescription, referred Steven for counseling, and recommended that he

attend AA meetings. R. 916.

On September 18, 2018, Steven followed up with Ms. Gillispie and reported that his

depression is "about the same, it's pretty bad." He reported situational anxiety, sleeping well, and

denied using alcohol. R. 927. His mental status was the same as the August visit, and Ms.

Gillispie refilled Welbutrin, started Celexa, and increased his gabapentin prescription for alcohol

abuse. R. 928–29.

On January 30, 2019, Steven saw Ms. Gillispie and reported taking Wellbutrin but not

taking his other prescribed medication since December. R. 930. He admitted drinking alcohol,

difficulty sleeping, and increased anxiety and depression without his medications. Id. His mental

status exam was normal, aside from sad affect. R. 931. Ms. Gillispie advised Steven to continue

his medications and follow up in two months.

On December 7, 2017, state agency psychiatrist Jo McClain, Psy.D., reviewed Steven's

records and determined that she had insufficient evidence to determine Steven's current mental

status. R. 88.  On reconsideration, state agency psychologist Howard S. Leizer, Ph.D., reviewed

Steven's records and determined that he had moderate impairments in several mental health

domains. R. 140–41. Specifically, Dr. Leizer determined that Steven had moderately limited

attention and concentration. Dr. Leizer found that Steven was not limited in his ability to sustain

an ordinary routine, perform activities within a schedule, maintain regular attendance, complete a

normal workday or workweek, and perform at a consistent pace. R. 141. Dr. Leizer explained

that Steven was capable of sustaining focus for 4 hours at a time with normal breaks. Id.  Dr.

Leizer found that Steven was moderately limited in his ability to interact with the general public

12

but not limited in his ability to accept instruction and respond appropriately to criticism from supervisors, to get along with coworkers or peers, and to maintain socially appropriate behavior. R. 142. Dr. Leizer explained that Steven could interact with the public for 4 out of 8 hours. Id. Dr. Leizer also determined that Steven was moderately limited in his ability to respond appropriately to changes in the work setting, and that changes to workplace routine and layout should be gradually introduced. Id. Dr. Leizer explained,

> The claimant presents with a combination of psych diagnoses, including anxiety, depression, PTSD, and substance use disorders. He has a history of hospitalization due to overdose and noncompliance to treatment.  ADLS indicate symptoms including nightmares and social avoidance, but he is able to perform self care, prepare food, shop, and maintain a relationship with a girlfriend.  Administrative findings of the initial decision were reviewed and considered, but new evidence received does not validate those findings.  Given the sum of findings, a simple-unskilled MRFC is proposed.

R. 142.

At the administrative hearing, Steven testified that he has problems interacting with people, has a hard time communicating, and quit jobs because of other people giving him a hard time. R. 47–48.  Steven testified to having daily panic attacks triggered by depression, and that he plans to see a psychologist at New Horizons. R. 48–49. Steven testified that he has been homeless since 2017 and has only had a few "slips" with alcohol and drugs since having treatment. R. 50–51.

In step three of the decision, the ALJ determined that Steven had moderate impairments with understanding, remembering or applying information; interacting with others; concentration, persisting or maintaining pace; and adapting or managing oneself. R. 19. Specifically, regarding interacting with others, the ALJ noted:

> The claimant reported he can suffer extended panic attacks with crowds.  He is able to shop some though.  He enjoys attending church.  He was anxious with the psychological consultative examiner but relaxed as rapport was established.  The claimant indicated he

> was sensitive to harsh comments by others, but the record does not show him particularly cautious with providers—he played a small prank with a CAN one time, and was not highly upset when he felt a provider was rude to him. Thought he complained about Carilion not treating him in one visit, the record does not indicate intense belligerence or anger issues. He has a girlfriend, suggesting some social functionality. The prohibition on interactions with the public accommodates his high anxiety with crowds of strangers. The claimant may have some difficulty with criticism, and the limitation to brief, occasional interactions with co-workers accommodates him in regard to co-workers, while the limitation to occasional interactions with supervisors and simple, routine work accommodates him in regard to supervisors.

R. 19.

In step four of the decision, the ALJ reviewed Steven's subjective testimony and medical records. R. 21–27. The ALJ noted that Steven testified to social interaction issues and the record indicates social anxiety issues. The ALJ noted Dr. Gardner's finding that Steven could not work with the public, could not be around large groups of co-workers and would be better working alone. R. 27. The ALJ noted that Steven became more relaxed during his examination with Dr. Gardner. The ALJ also noted that Steven reported panic attacks with crowds, but the record does not otherwise reflect great anxiety with people. R. 27. The ALJ noted that the record does not indicate total inability to be around the public, as Steven is able to shop, and did not have anxiety at the hospital when he joked with a nurse. The ALJ concluded that Steven's issues with crowds indicate that he is better accommodated with a prohibition on public interaction. Id.

The ALJ also reflected that the record does not indicate Steven's inability to be around groups of people with whom he has some familiarity, noting his participation in substance abuse group sessions, attendance at church, and lack of intense anxiety from being in jail. The ALJ concluded that "the record does not indicate such intense social anxiety or behavior difficulties that the claimant could not be around co-workers at all, and the limitation to occasional, brief interactions with co-workers accommodations him. He could handle occasional interactions with

supervisors, with the further limitation to simple, routine work, as such work would not necessitate much, if any, supervision." R. 27.

The ALJ also considered Steven's testimony about difficulty communicating with others, his sensitivity to criticism, and leaving jobs due to psychological symptoms. The ALJ noted, however, that Steven lost his job in 2010 due to drug abuse, that he was able to joke in the hospital, that he shook his head and walked away when he felt people were being rude to him, and he was alert and engaged in a group session. The ALJ found that the record in general does not indicate extreme sensitivity or particular difficulty communicating with others and the social interaction limitations to little contact with others accommodates this sensitivity. R. 27.

The ALJ noted that Steven had fluctuating mental health issues, with exacerbations typically when he was off medication or had a significant stressor. The ALJ noted that Steven's psychological findings did not show thought abnormalities or concentration difficulties. Steven's primary care provider noted anxiety in visits, but not focus issues, and his mental health provider noted that he was able to maintain concentration. R. 28.

The ALJ reviewed Dr. Gardner's opinion and found it persuasive, noting, "[t]he psychological consultative examiner limitation to simple work is supported by his findings, where the claimant had some difficulty with serial 7's but not serial 3's. The limitation is consistent with the record as a whole as well, which shows circumstantial thinking in one visit but otherwise normal thinking, and no particular concentration issues." R. 28. The ALJ further stated, "the residual functional capacity limits the claimant to simple, routine tasks. With such work, and the social interaction limitations, the claimant would be able to concentrate, and maintain persistence and pace." R. 28. The ALJ found Dr. Gardner's "highly restrictive" social interaction limitations somewhat supported by the examination and somewhat consistent with the

record. The ALJ noted that Steven had some anxiety in the examination and in visits, and he made reports of social anxiety with groups. The ALJ further noted that the evidence does not indicate that Steven needs to work entirely alone, or even a particular issue with groups of non-strangers, such as at church, and these limitations are not persuasive. Otherwise, the ALJ found Dr. Gardner's social interaction limitations to be persuasive.

The ALJ also found persuasive Dr. Leizer's determination that Steven has moderate limitations in concentration and dealing with the public and is limited to simple work.  The ALJ noted that Dr. Leizer's conclusions are consistent with the evidence.

The ALJ provided a very restrictive RFC, concluding that Steven could perform simple, routine tasks with simple, short instructions and simple decisions; is able to interact occasionally with supervisors; can have occasional, superficial interaction with co-workers, with "superficial" meaning that he can do such things as telling time of day or providing directions to the bathroom; he can never interact with the public; and he is limited to a low stress work setting, with "low stress" defined as having only occasional workplace changes. R. 21.

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain

the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Steven's allegations that the ALJ did not properly account for his moderate impairment with interaction with others are unfounded. Steven alleges that the ALJ "makes no mention of plaintiff's testimony that he stays in the woods to avoid people and that when he tried to work, he had trouble being around others." Pl. Br. Summ. J. p. 25.  The ALJ is not required to recite all of Steven's subjective statements or each piece of evidence in his decision. Timothy R. v. Berryhill, No. 19-cv-915-JMC, 2020 WL 974954, at *5 (D. Md. Apr. 24, 2020) (citing Reid v. Comm'r, 769 F.3d 861, 865 (4th Cir. 2014)).  "[A]n ALJ's failure to cite a specific piece of evidence is not an indication that the evidence was not considered." Corcoran v. Astrue, No. SKG-08-913, 2009 WL 3100350, at *28 (D. Md. Sept. 22, 2009). Steven also takes issue with the ALJ's finding that he can interact with others because he attends church, arguing that he attends church but does not interact with others. Pl. Br. Summ. J. p. 26. The ALJ's reference to this evidence, however, is in the context of Steven's ability to be around groups of people with whom he has some familiarity.  The ALJ did not solely rely upon Steven's church attendance for this finding, but also noted that Steven participated in substance abuse group sessions without difficulty and did not report intense anxiety from being in jail. R. 27.

The ALJ considered Steven's allegations of difficulty being around people at length in both steps three and four of his opinion.  The ALJ spent multiple paragraphs of the decision discussing Steven's difficulty interacting with others and the evidence reflecting his ability to interact with the general public, co-workers and supervisors. The ALJ's RFC is supported by Steven's mental health treatment records and the opinions of the physicians in the record. The

ALJ considered Steven's mental health treatment and complaints at length, and carefully analyzed each facet of Steven's mental impairments.

Steven also asserts that the ALJ should have given Dr. Gardner's opinion that Steven needs to work alone more weight, and that his rationale for finding it unpersuasive is not supported by substantial evidence. The ALJ considered Dr. Gardner's opinion in detail, and explained at length why he found certain portions of the opinion persuasive and other portions unpersuasive. Specifically, the ALJ noted, "[t]he evidence does not indicate the claimant needs to work entirely alone, or even a particular issue with groups of non-strangers, such as at church, and these limitations are not persuasive. Otherwise, the social interaction limitations are persuasive." R. 28. The ALJ considered the factors required by the regulations[4], provided reasoning for finding all of Dr. Gardner's proposed limitations persuasive, except for the limitation to working entirely alone, and established the required logical bridge from the evidence to his conclusion. R. 28.

Steven also asserts that the ALJ failed to specifically address his ability to sustain work over an eight-hour workday. Pl. Br. Summ. J. p. 24. The ALJ explicitly stated that Steven did not complain of particular pace or persistence issues, and with intact concentration, he could maintain pace and persistence. R. 20. Steven does not point to any evidence reflecting difficulty with persistence or pace. Steven's subjective statements do not indicate any issues in those areas,

---

[4] The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the most important factors considered are supportability and consistency. Id. The ALJ is not required to explain the consideration of the three factors. Green v. Saul, No. 5:20-cv-1301-KDW, 2021 WL 1976378, at *6 (D.S.C. May 18, 2021). However, when "medical opinions or prior administrative medical findings about the same issue are equally well–supported . . . and consistent with the record," the Commissioner will articulate how he considered the following factors: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

nor do any of the mental health or medical records reflect concerns with his ability to sustain work.

Thus, unlike in <u>Mascio</u>, the court here is not left to guess at the ALJ's decision-making process. The ALJ relied upon Steven's testimony, his treatment records, and the opinions of the reviewing and consulting physicians to find that despite Steven's moderate mental health impairments, he could perform a limited RFC. The ALJ reviewed Steven's record evidence in detail, and then explained how the RFC accommodated each of Steven's mental health limitations in the analysis.

**<u>Subjective Allegations</u>**

Steven also alleges that the ALJ failed to properly assess his subjective allegations regarding pain and fatigue and the extent of his daily activities, citing <u>Arakas v. Commissioner</u>, 983 F.3d 83 (4th Cir. 2020). Pl. Br. Summ. J. p. 28–31.  Steven is correct that objective evidence is not required to find a claimant disabled. However, that does not require an ALJ to accept without question a claimant's complaints of disabling pain from impairments that do not always have objective markers.

 Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. <u>Id.</u> at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. <u>Id.</u> §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the

entire case record, including the objective medical evidence; an individual's statements about

the intensity, persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in the

individual's case record." Id. (emphasis added). "At this step, objective evidence is *not* required

to find the claimant disabled." Arakas, 983 F.3d at 95 (citing SSR 16-3p, 2016 WL 1119029, at

*4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through

clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire

case record and may "not disregard an individual's statements about the intensity, persistence,

and limiting effects of symptoms solely because the objective medical evidence does not

substantiate" them. Id. at *5.

Steven's effort to apply Arakas to this case is unavailing. Here, Steven's physical

complaints of pain resulted from a previously fractured right wrist and left shoulder injury. These

physical impairments are not comparable to conditions such as fibromyalgia, that was at issue in

Arakas, and that are not identified through objective testing. In Arakas, the plaintiff experienced

pain from a condition that did not create objective findings, and the Fourth Circuit found that the

ALJ erred by relying on the absence of such findings to discount the plaintiff's subjective

statements. Here, the ALJ did not rely on the absence of objective medical evidence. Rather, the

record contains multiple treatment records relating to Steven's right wrist facture and left

shoulder injury, and the extent of Steven's healing from those injuries.  The ALJ documented the

objective medical findings in his review of the medical evidence and in his analysis. R. 22–26,

28–29.  The ALJ determined that Steven's subjective statements about the intensity of his

symptoms and their effect on his ability to work were inconsistent with the medical evidence,

which included evidence that Steven did not complain of wrist issues or left shoulder pain after

August 2017, that his examinations were normal in 2018, that Steven worked on roofs and as a

carpenter. R. 28–29. See Walker v. Saul, No. 2:20-cv-00196, 2021 WL 342570, at *10 (S.D.W.

Va. Jan. 6, 2021) ("[T]he ALJ did not discount [c]laimant's subjective complaints based on the

lack of objective evidence, but instead properly considered numerous factors, including

[c]laimant's daily activities). Cf. Arakas, 983 F.3d at 97 ("Thus, while the ALJ may have

considered other evidence, his opinion indicates that the lack of objective medical evidence was

his chief, if not definitive, reason for discounting Arakas's complaints.").

   Steven asserts that the ALJ erred by concluding that he had good use of his upper

extremities because he worked on a roof as a carpenter; by noting that he was dismissed from his

last job due to drug use and not anxiety issues; and by pointing to the fact that he stayed focused

during an appointment with a mental health provider. Pl. Br. Summ. J. p 30.  A reviewing court

gives great weight to the ALJ's assessment of a claimant's statements and should not interfere

with that assessment where the evidence in the record supports the ALJ's conclusions.  See

Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984).  Further, a reviewing court will defer

to the ALJ's credibility finding except in those "exceptional" cases where the determination is

unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or

no reason at all.  See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4,

2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

   Here, the ALJ properly considered Steven's testimony regarding his pain, limitations and

daily activities. The ALJ discussed Steven's complaints regarding his physical and mental

impairments in detail.  The ALJ analyzed the medical evidence and opinion evidence, and

provided a thorough explanation as to how the RFC accommodates Steven's impairments. The

ALJ recognized Steven's limited daily activities but cited specific evidence as to why those

activities may not be as limited as alleged based upon Steven's objective examination findings and progress notes in the record. Considering Steven's treatment notes, together with the medical opinions, substantial evidence supports the ALJ's conclusion that objective medical evidence undermined Steven's statements regarding the extent of his limitations. See Ladda v. Berryhill, 749 Fed. Appx. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.)

Though Steven disagrees with the ALJ's analysis and conclusions, he does not identify any material conflicting evidence that the ALJ failed to consider or any material misstatement of the evidence of record. Rather, Steven simply asks the Court to reweigh the evidence and reach a different conclusion than the ALJ. The ALJ's opinion applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Steven's subjective complaints with substantial evidence, and that Steven can perform work at the level stated in the ALJ's opinion.

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Steven's motion for summary judgment and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not

specifically objected to within the period prescribed by law may become conclusive upon the

parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual

recitations or findings as well as to the conclusion reached by me may be construed by any

reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: January 4, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge