CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 03 2022

JULIA C. DUDLEY, CLERK
BY: /s/ A. Slagle
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STEVEN H., | ) |
| Plaintiff | ) Civil Action No. 7:20-CV-506 |
| v. | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) By: Michael F. Urbanski<br>) Chief United States District Judge |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on January 4, 2022, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Steven H. (Steven) has filed objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Steven filed an application for disability insurance benefits and supplemental security income on August 14, 2017, alleging disability beginning on April 30, 2016. Steven was 48 years old at the alleged onset date and his "date last insured" (DLI) was September 30, 2017. He seeks disability based on post-traumatic stress disorder (PTSD), depression, attention deficit hyperactivity disorder (ADHD), mental problems, previous high blood pressure,

surgery on his right wrist in January 2017, social anxiety, and a broken jaw resulting from an automobile accident in May 2017. R. 261.

The ALJ found that Steven had severe impairments of anxiety, trauma disorder, personality disorder, depression, substance abuse disorder (alcohol), fractures of the right wrist status post open reduction and internal fixation surgery, and left shoulder sprain, but that none of his impairments met or medically equaled a listed impairment. R. 18-19. The ALJ found that Steven had the residual functional capacity (RFC) to perform medium work with additional limitations of operating hand controls with both hands frequently; being able to perform simple, routine tasks with simple, short instructions and simple decisions; occasionally interacting with supervisors; occasional, superficial interaction with coworkers, with "superficial" meaning he can do such things as telling the time of day or providing directions to the bathroom; never interacting with the public; and working in a low stress environment, with "low stress" defined as having only occasional workplace change. R. 21.

Relying on this RFC, the ALJ determined that Steven could not return to his past relevant work as a window installer or window unit assembler. However, based on the testimony of a vocational expert, the ALJ found that Steven could do the jobs of laundry laborer, housekeeper/cleaner, or clothing bagger, and that such jobs exist in significant numbers in the national economy. Therefore, the ALJ concluded that Steven was not disabled. R. 29-30. The Appeals Council denied Steven's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Steven objects to several of the magistrate judge's conclusions. ECF No. 23.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

3

matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir. 2010) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

### III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind,

Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Steven objects to the following findings by the magistrate judge: (1) Substantial evidence supports the ALJ's findings on Steven's mental RFC; (2) Substantial evidence supports the ALJ's physical RFC; and (3) The ALJ properly considered Steven's subjective allegations. The Commissioner responded to the objections. ECF No. 24.

### A. Mental RFC

The mental RFC assessment is discussed in Social Security Ruling 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[3] or meets a listing for a mental impairment at Step 3 of the

---

[2] Detailed facts about Steven's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 22) and in the administrative transcript (ECF No. 12) and will not be repeated here except as necessary to address his objections.

[3] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering

sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. However, the limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *4 (S.S.A. July 2, 1996).

In assessing the RFC, the adjudicator should consider the claimant's medical history, medical signs, and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. Id., SSR 96-8p, 1996 WL 374184 at *5. The RFC assessment must include a narrative discussion describing

---

his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id., SSR 96-8P, 1996 WL 374184 at *7.

Steven argued to the magistrate judge and objects here that the ALJ's mental RFC is not supported by substantial evidence. He argues that the ALJ failed to consider his moderate mental impairments in assessing the RFC. However, a review of the record shows that the ALJ adequately considered the impairments and his assessment is supported by substantial evidence.

When the ALJ did the assessment at Step 3 to determine if any of Steven's impairments met or equaled a listed impairment, he determined that Steven had moderate limitations in his ability to understand, remember, or apply information; to interact with others; to concentrate, persist, or maintain pace; and to adapt and manage himself. A "moderate limitation" means that a person has a fair ability to function in the area independently, appropriately, and effectively on a sustained basis. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c).

Regarding his ability to interact with others, at Step 3 of the sequential evaluation, the ALJ noted Steven's report that he can suffer extended panic attacks with crowds but is able to do some shopping. He reported that he enjoyed attending church. When he participated in a consultative examination with a psychologist, he was anxious initially but became more relaxed. Steven said he was sensitive to harsh comments by others, but the record did not show him particularly cautious with providers. He played a small prank on a certified nursing assistant one time while hospitalized and was not highly upset when he thought a provider was rude to him. The record did not indicate intense belligerence or anger issues. He had a girlfriend, which indicated some social functionality.

8

At Step 4 of the sequential evaluation, the ALJ summarized Steven's testimony at the hearing, including that he gets overwhelmed being around people and that he has a hard time communicating with people. He reported that every job loss he has suffered has been because of dealing with other people, even though he is an excellent worker. He testified to daily panic attacks triggered by depression and the loss of his father. Transportation issues made it difficult to see a mental health provider, although he did take public transportation. He had been homeless since 2017. He believed that everyone tried to take advantage of him and made fun of him so he stayed in the woods. He had issues with drugs and alcohol but had only had a few "slips" since having treatment. He stated that his mental issues were worse when he was not using drugs or alcohol. He felt tired and slept 14 or 15 hours in a day. He had difficulty concentrating and understanding and would ask people to repeat what they said three or four times. R. 21-22.

The ALJ next summarized Steven's mental health history, including hospitalizations for substance abuse treatment in 2011, visits to the emergency room for mental health issues in 2012 and 2013, and a visit to a psychological consultative examiner in 2013. The psychologist examined Steven and determined that his memory was normal and he would likely have no impairment of concentration, persistence, or pace in performing simple and repetitive work tasks. He could likely perform complex work tasks with mild to moderate impairment of concentration, persistence, or pace. His abstract thinking was mildly impaired. The examiner opined that Steven was capable of performing simple and repetitive work tasks, but that he should not work with the general public or in open spaces with large numbers of coworkers. Steven became less anxious and more relaxed as rapport was established during

9

the examination. The examiner opined that Steven would become more anxious around a large number of coworkers or the general public, but he could interact with a small number of coworkers. He would be best suited to working with infrequent interactions with supervisors and working alone. R. 23.

The ALJ also summarized Steven's medical records from 2013-2018. He noted Steven's report that he had been using marijuana, cocaine, and alcohol since he was sexually abused when he was 15 years old. In 2014, Steven reported having been in jail for four months and was very anxious because he was out of medication. In August 2015, Steven went to the emergency room after having been assaulted. In November 2015, he was noted to be pleasant and interact appropriately with peers and staff. He wanted to go to church and be with his "church family." A provider described his mental status as calm and cooperative. In January 2016, he participated in group substance abuse sessions and had been sober for a span of months. He later met with his provider reporting symptoms of anxiety and PTSD and asked for medication. He also reported a shoulder injury. R. 24.

In January 2017, Steven was treated for right wrist pain after he fell in jail following an arrest. His mood and affect were appropriate. At a mental health evaluation in jail, he was described as calm, well-kept, with an appropriate affect and no evidence of memory impairment. He later went to the emergency room following an automobile accident in which he suffered a rib fracture and sinus fracture. In June 2017, he was described as fidgety and anxious at an examination. R. 24-25.

In February 2018, he reported having recently been released from jail and also that his father had died. On examination he had a flat affect, and he was anxious and fidgety. He was

10

described as "not functioning well" and was prescribed Celexa and BuSpar in addition to Wellbutrin. In June 2018, he described his depression as stable on Wellbutrin and a screening showed mild depression. He described his pain as zero. On examination he was able to concentrate and stay focused, with intact memory and an appropriate affect. In September 2018, a depression screening showed moderate depression. His mood and affect were sad, but findings were otherwise normal. R. 25-26.

In making the RFC assessment, the ALJ stated that Steven's anxiety issues around crowds would be accommodated with a prohibition on public interaction. However, Steven had the ability to be around people with whom he became familiar, evidenced by his church attendance and participation in substance abuse groups. He did not report intense anxiety from being in jail. Treatment records did not describe him as having great behavior or mood issues and he was not described as rude or highly unstable. The ALJ concluded that the evidence showed that limitations to occasional, brief interactions with coworkers, brief interactions with supervisors and the limitation to simple, routine work would accommodate his social anxiety issues. R. 27. Similarly, the ALJ concluded that the limitation to little interaction with others would accommodate Steven's difficulties communicating with other people due to his sensitivity to criticism and his report that he left jobs because he felt overwhelmed. Id.

The magistrate judge found that the restrictions in the RFC adequately accounted for Steven's moderate limitations in interacting with others. Steven objects that the ALJ "cherry-picked" evidence from the record and ignored other relevant evidence that was contrary to his findings. In support, he cited to two portions of testimony at the hearing, where he said that

11

he was depressed and felt like he did not want to live and that he felt like everyone he was around tried to take advantage of him, so he stayed in the woods. R. 50-51. Steven also pointed to his testimony about his difficulties communicating with people and said that friends for whom he worked would scream at him and cheat him out of his wages because he had trouble following directions. R. 55-56.

However, the ALJ did not ignore this evidence, but cited to it. R. 21-22. Steven next alleges that the ALJ merely recited the evidence and then stated his conclusion without explaining how he arrived at his conclusions. Objs., ECF No. 23 at 4. A review of the record shows that the ALJ included a narrative discussion, citing to specific medical facts and non-medical evidence, explaining how the evidence supported his conclusions. He described the evidence showing that Steven is anxious in crowds and then limited him to jobs where he would not interact with the public. Based on the evidence showing Steven could become comfortable with people, at church, in substance abuse treatment groups, and with providers, and that he did not show great behavior or mood issues, the ALJ limited Steven to occasional, brief interactions with coworkers and supervisors. This explanation is sufficient because it allows subsequent reviewers to understand how the ALJ arrived at the limitations in the RFC.

Steven also objects that the ALJ rejected the consultative examiner's opinion that Steven needs to "work alone." Objs., ECF No. 23 at 4. However, that is an incomplete representation of the psychologist's opinion, in which he stated the following:

> [Steven's] anxiety becomes severe when he is attempting to socially interact with large numbers of coworkers or interact with the general public. He is capable of interacting with a small number of coworkers but not with the general public. He would be best suited to working alone and with infrequent interactions with supervisors.

12

R. 644. Rather than reject this conclusion by the psychologist, the ALJ explicitly included it when he limited Steven to jobs involving occasional, superficial interactions with coworkers and supervisors. R. 21.

Steven further objects that the ALJ failed to describe how his moderate limitation in concentration, persistence, or pace was accommodated in the RFC. The ALJ cited Steven's testimony that he has trouble concentrating and understanding and has to ask people to repeat themselves. R. 22. The ALJ also cited to the evidence from the psychological consultant that Steven was able maintain concentration for serial 3s although he had trouble with serial 7s, but likely would have no impairment of concentration, persistence, or pace in performing simple and repetitive work tasks. The psychologist also stated that Steven likely could perform complex work tasks with mild to moderate impairment of concentration, persistence, or pace. Other providers did not describe concentration issues, other than finding Steven fidgety at times. His primary care provider did not note focus issues and a mental health care provider in 2018 said Steven could maintain concentration. The ALJ then relied on this evidence to find that the social interaction limitations combined with the limitation to simple, routine tasks would allow Steven to be able to concentrate and maintain persistence and pace. R. 28. Thus, the ALJ adequately resolved conflicts in the evidence and accommodated Steven's moderate impairment in the area of concentration, persistence, and pace.

Based on the foregoing, the court agrees with the magistrate judge that the ALJ's mental RFC determination is supported by substantial evidence. Steven's objections to this finding are **OVERRULED**.

## B. Physical RFC

Steven objects to the magistrate judge's finding that substantial evidence supports the ALJ's assessment of his physical RFC. As discussed above, the process for assessing a claimant's RFC is set forth in SSR 96-8P, 1996 WL 374184. The ruling sets out in relevant part the following:

> The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Id. at *1. Physical abilities set out in 20 C.F.R. 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching. Other abilities set out in paragraph (d) of the regulation include those affected by skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which impose environmental restrictions.

The RFC analysis must include a narrative discussion describing how the evidence supports each conclusion. The ALJ must cite specific medical facts such as lab results and nonmedical evidence such as daily activities and observations of the claimant. The ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the claimant can perform based on the evidence in the case record. The ALJ also must explain how he considered and resolved any material inconsistencies or ambiguities in the record. SSR 96-8P, 1996 WL 374184 at *7.

14

The ALJ discussed the medical evidence in the record showing that Steven, who is left hand dominant, broke his right wrist in January 2017 which caused him to undergo an open reduction and internal fixation surgery in February 2017. The fracture healed well but he reinjured the wrist in a June 2017 motor vehicle accident. He had no significant tenderness and minimal swelling with some decreased range of motion. Imaging showed no evidence of displacement and his fracture was well-healed. Steven had weakness in his right hand in August 2017 and his orthopedic provider suggested physical therapy. Steven did not complain of wrist issues when he established care with a primary physician in June 2018 and the exam was normal. R. 28-29, 911-14.

Steven complained of a left shoulder injury in December 2016 and was diagnosed with a sprain. In August 2017, he complained of pain in the left shoulder, which was worse with overhead lifting. He had some mild tenderness in the shoulder and some weakness in his rotator cuff with positive impingement signs. Examination of his right wrist showed he had near full range of motion, mild tenderness, and 4/5 strength in the wrist. The provider recommended physical therapy for the right hand and left shoulder but did not set any restrictions. R. 25.

The ALJ noted that there are no further complaints of shoulder pain in the record and Steven worked on roofs and as a carpenter for three days in May 2019, stopping when he was bitten by a snake. R. 26, 56. The ALJ also cited Steven's hearing testimony that he cannot use his right thumb and drops things and that he has ongoing pain in his right wrist. R. 21, 55.

The ALJ pointed out that the state agency examiners at the initial determination gave no limitations based on insufficient evidence and the ALJ did not evaluate the determinations

as opinions. At reconsideration, the state agency examiners rated Steven's physical impairments as non-severe. R. 29.

The only physical limitation assessed by the ALJ in the RFC was that Steven's ability to operate hand controls was limited to "frequently." The magistrate judge found that the ALJ properly explained how the RFC accounted for Steven's physical impairments. Steven objects that the ALJ did not explain how the limitation to medium work and frequent use of hand controls accommodates the residual weakness in his right wrist and left shoulder. He further argues that simply summarizing evidence and stating conclusions without an explanation does not satisfy SSR 96-8P.

However, the ALJ did not make a finding that Steven had residual weakness in his right hand and left shoulder. Rather, after noting that examination showed some weakness in his left shoulder and right wrist in August 2017, but that the provider did not set any restrictions on his activity, the ALJ stated that the lack of restrictions was largely consistent with the later record in which Steven had no findings or complaints about wrist or shoulder problems. The ALJ added that "he might have residual weakness indicating some precautionary limitations from his two upper extremity issues" and gave him a medium level of lifting and carrying as a precaution. R. 29 (emphasis added). This explanation is sufficient because it allows a reviewer to understand why the ALJ limited Steven to frequently using hand controls, i.e., it was a precaution in the event he experienced residual weakness in his right hand. Steven's objection to the magistrate judge's finding that the physical RFC is supported by substantial evidence is **OVERRULED**.

## C. Subjective Allegations

Steven argued to the magistrate judge that the ALJ improperly discounted his subjective complaints of pain and fatigue based largely on the lack of objective evidence substantiating his statements, citing in support Arakas v. Commissioner, 983 F.3d 83, 95 (4th Cir. 2020). The magistrate judge found that the ALJ properly analyzed Steven's subjective complaints of pain, limitations, and daily activities. Steven objects that the magistrate judge's analysis ran afoul of Arakas. Notably, Steven made few allegations of pain. He complained at the hearing that his right wrist hurt constantly, and he complained of weakness in his right hand in 2017. He did not complain of pain or weakness in his hand to medical providers after 2017.

When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). In making the second determination, the ALJ first looks at the objective medical evidence. Id., SSR 16-3P, 2017 WL 5180304, at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources, and other sources are considered. Id. 2017 WL 5180304, at *6.

The ALJ considers a claimant's statement about symptoms, and any description by medical sources or nonmedical sources about how the symptoms affect activities of daily living

17

and the ability to work. However, statements about symptoms alone will not establish disability. 20 C.F.R. § 404.1529(a).

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

Id.

In Arakas, the Fourth Circuit reiterated that "'while there must be objective medical evidence of some condition that could reasonably produce the pain there need not be objective evidence of the pain itself or its intensity.'" Id. at 95 (citing Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir. 2006)). The plaintiff in Arakas alleged disability in part based on her diagnosis of fibromyalgia, "a disease whose 'symptoms are entirely subjective,' with the exception of trigger point evidence." Id. at 96 (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)).

The Arakas court held that it is error for an ALJ to improperly discount a plaintiff's subjective complaints of pain and fatigue based largely on the lack of objective medical evidence substantiating her statements. Id. The ALJ relied principally on findings of a full range of motion and the lack of joint inflammation to discount Arakas' subjective complaints as being inconsistent with the objective evidence, but in doing so he applied an incorrect legal standard. Id. The error was "particularly pronounced" in a case involving fibromyalgia, a disease whose symptoms are entirely subjective. Id. However, even in cases where an

18

impairment is confirmed by objective medical findings, an ALJ may not discount subjective evidence of pain solely on a lack of objective evidence of pain intensity. Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017).

The ALJ in the instant case did not rely only on the lack of objective evidence to discount Steven's allegations of pain. Rather, in addition to the objective findings, the ALJ observed that Steven did not complain of wrist or shoulder pain to a medical provider after 2017 and that he was working on roofs and as a carpenter in May 2019, "indicating he had good use of his upper extremities despite his right wrist and left shoulder issues." R. 29. The court finds that the ALJ adequately explained why he discounted Steven's complaint at the hearing that he has constant pain in his right wrist. Steven's objection to the magistrate judge's finding on this issue is **OVERRULED**.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. Therefore, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: February 3, 2022

Michael F. Urbanski
Chief United States District Judge